CARTER *et al. v.* DABBS.

(In Banc. June 12, 1944.)

[18 So. (2d) 747. No. 35646.]

James A. Finley, of Tupelo, and Paine & Paine, of Aberdeen, for appellants.

694

Marshall **T. Adams** and **George T. & Chas. S. Mitchell,** all of Tupelo, for appellee.

Argued orally by **Thos. F. Paine**, for appellants.

**Roberds, J.**, delivered the opinion of the court.

On December 8, 1942, Alice Edwards executed to Reuben Dabbs the instrument of writing here set out by the reporter in full, except the acknowledgment, in the

margin.[1]   On the same day · Alice  Edwards  and  her

---

[1]Warranty Deed

Alice  Edwards to Reuben Dabbs

This Indenture made on the 8 day of December, A. D., Nineteen Hundred and forty two by and between Alice Edwards of the County of Monroe, State of Mississippi, party of the first part and Reuben Dabbs of the County of Monroe, State of Mississippi, party of the second part.

Witnesseth, That the said party of the first part, in consideration of the sum of Ten & No/100 Dollars to be paid by the said party of the second part, the receipt of which is hereby acknowledged, does by these presents, grant, bargain, and sell, convey and confirm, unto the said party of the second part his heirs and assigns, the following described lots, tracts, or parcels of land, lying, being, and situated in the County of Monroe and State of Mississippi, known and described as follows:

North east ¼ less fifteen acres, NE¼ of SE¼ Section 13, Township 13, Range 18.

The said Reuben Dabbs is to pay Two hundred & No/100 ($200.00) the first day of each year beginning the first day of the year 1944 & each year thereafter until her death, at that time the above described property is to be said Reuben Dabbs. If Reuben Dabbs fails to make full payment each year this deed is null & void. The said Alice Edwards & G. D. Carter is to have home & use of pasture until their death on above described property.

To Have and to Hold the premises aforesaid with all and singular the right, title, privileges, appurtenances and immunities thereto belonging, or in anywise, appertaining, both at law and equity, unto the said party of the second part, and unto his heirs and assigns forever in fee simple.  And the said party of the first part, for - - - - - heirs, executors and administrators, does hereby covenant and agree with the said party of the second part his heirs and assigns, that the party of the first part will warrant and defend the title of the said premises unto the said party of the second part, and unto his heirs and assigns forever, against the lawful claims and demands of all persons whomsoever, except on account of taxes due after the 1st day of January, 1943.

In Witness Whereof, The said party of the first part has hereunto set her hand and seal - - - - the day and year first above written.

Alice  Edwards· (Seal)

brother, G. D. Carter, executed to Dabbs another instrument of writing which, in all essential parts, is the same as the instrument so set out, except it purports to convey 320 acres of land, and Dabbs, grantee, agreed to pay grantors $300 January 1, 1944 and "each year thereafter until their death," and "The said G. D. Carter is to have ten acres to cultivate each year & the use of one house on above described property until his death."

On August 27, 1943, Mrs. Edwards and Mr. Carter filed bills in the chancery court seeking to (1) have these instruments adjudicated as testamentary in character and effect and, therefore, void, not being in forms required of wills, or, if deeds, (2) to set them aside because of fraud allegedly practiced upon them by Dabbs. The causes were consolidated and tried together by agreement, and the chancellor dismissed the bills.

Are these documents wills or deeds? Both, following the promise of Dabbs to pay the specified annual amounts to the makers until their deaths, contain this phrase,— ". . . at that time the above described property is to be said Reuben Dabbs." Appellants say this phrase stamps the instrument as testamentary in character. The applicable law is settled. It is elementary that a deed, to be operative, must pass a present interest, while an instrument testamentary in character operates only upon and by reason of the death of the maker, who, by its execution, parts with no right and divests himself of no estate, and. who, while possessing the requisite capacity, can revoke or change the same at his pleasure. It is furthermore a cardinal rule of construction that it is the duty of the court to ascertain and give effect to the intention of the parties as gathered from the entire instrument, in the light of the circumstances surrounding its execution. It is for us to apply these settled rules and principles to the case at hand. Specifically, as applied to the instruments under consideration, we must ascertain what the parties themselves intended, the circumstances surrounding them at the time of execution, and the meaning of the terms

of the documents. The parties themselves testified. They all agreed that they negotiated prior to the execution of the instruments. All of these negotiations were on the basis of a sale and purchase,—a conveyance of lands for a consideration. They agreed upon the terms. They went before a justice of the peace and informed him of the terms and directed him to prepare the documents. He did that according to the instructions. The instruments were read. Mrs. Edwards informed Mr. Carter, somewhat in the nature of a warning, that they were conveying away the property. Mr. Dabbs, testified, without contradiction, that he wanted the deferred payments secured to the grantors, and, therefore, the provision, "If Reuben Dabbs fails to make full payment each year this deed is null and void," was inserted. The grantors in their testimony always referred to the instruments as deeds. There is no question whatever that Mrs. Edwards and Mr. Carter intended to execute deeds and understood they were doing so. The word "will" was never spoken.

As to the instruments themselves, they are by their own words labeled warranty deeds; they contain the operative words of conveyance usual to warranty deeds; they convey the land in fee simple; the land is described specifically and the grantors covenant they will warrant and defend the title forever against the lawful claims and demands of all persons. They contemplate delivery of the land to the grantee, who is obligated to pay the taxes. Grantors reserve a home, the use of pasture, ten acres, and a house on the lands. The instruments set out the consideration and obligate Dabbs to pay it. It will be noted the phrase ". . . at that time the above described property is to be said Reuben Dabbs" immediately follows the obligation to pay the annual consideration until the deaths of the grantors. This is followed by the provision that if Dabbs fails to pay the consideration, "this *deed*" is null and void. The parties meant by the quoted provision that Dabbs was not obligated to make further payments after the deaths of the grantors—that

the land would be free from further claims for the consideration of purchase; that the land would then be his property absolutely. It did not mean the deeds were not to take effect until after the deaths of the grantors. It is our conclusion that these instruments are deeds.

But it is said that they were obtained by fraud and the fraud should vitiate them. That fraud rests upon appellants' statements that (1) Dabbs said if they conveyed to him the lands he could produce more feed and food for the war effort than he was producing, (2) that if they were not satisfied he would re-deed the lands to them, and (3) such gross inadequacy of consideration as to shock the conscience of the court. As to the first ground, appellants admitted it was a laudable ambition and it is not claimed the statement is untrue as an assertion of fact or as an act of performance. As to the second ground, Dabbs denied be made such a promise, but admitting that he did, it constituted only an oral executory promise to reconvey land void under the statute of frauds. And as to the third ground, the estimates of the value of the land run from five thousand to eighty-four hundred dollars. However, all the witnesses agree the land is not well located as to the public highway; that the improvements have become dilapidated; that the timber of appreciable value has been removed, and that there are only around one hundred and ten acres of land in cultivation on the tract of five hundred acres. Dabbs testified that it would cost two thousand dollars to repair the houses, etc., and to put the farm in proper condition. This was not denied. The taxes are about $100 annually, which Dabbs must pay. It is pertinent to add that Dabbs had been renting for $100 per year the lands not otherwise used by the appellants on these farms, and they desired that he make a long-time rental arrangement at that price, which Dabbs would not do because of the run-down condition of the farm. This is what led to the negotiations for sale and purchase.

We, of course, cannot know how long Mrs. Edwards or Mr. Carter will live. He was seventy-two years of age at the time of the trial and she between sixty-nine and seventy. They are to receive five hundred dollars per year, have a home, another house, use of pasture, and ten acres of land for cultivation as long as they live. The payment to them of this five hundred dollars annually is secured. At their ages and station in life this will likely supply all of their wants and needs while they live, and if Providence shall bless them with long lives, they will receive the full estimated maximum value of the lands, conveyed. It is easily conceivable that the sale of the land on these terms is better for them than its keep. But be that as it may, the inadequacy of the price, if there be inadequacy, is not so gross as to justify us in setting aside the deeds for fraud, however desirable that might be from the standpoint of harmony between the parties.

Affirmed.