Rodgers, et al. *v.* Rodgers, et al.

Nov. 9, 1953

No. 38934 42 Adv. S. 11 67 So. 2d 698

*Brewer & Brewer, William O. Luckett,* Clarksdale, for appellants.

*Maynard, Fitzgerald & Maynard, E. M. Yerger,* Clarksdale, for appellees.

Hall, J.

J. H. Brown died in 1892, his wife having predeceased him. He left one child, Mary Markus Brown Rodgers, who was then married to J. F. Rodgers. She was also known as Mrs. Markie Brown Rodgers. She and J. F. Rodgers had two children, John Ferdinand Rodgers and Mark Childress Rodgers. Both were born prior to the death of J. H. Brown. Her husband later died and she married a Morris who predeceased her, and no children were born of this union. John Ferdinand Rodgers, the son of Mary, died intestate in 1939, leaving four children, viz., J. F. Rodgers, Jr., Rigby Rodgers, Harvey B. Rodgers, and Mildred Rodgers Krug, who are the appellees

herein. Mark Childress Rodgers, the other son of Mary, died intestate in 1929, leaving two children, viz., Childress Rodgers and Dorothy Rodgers Werk, who are the appellants herein. Mary died intestate in 1950.

This suit involves the title to two parcels of land originally owned by J. H. Brown and the specific question presented is whether appellants and appellees own said land per stirpes or per capita. The learned chancellor held that they acquired the same per capita, each owning an undivided one-sixth interest therein. The two appellants contend that they each own an undivided one-fourth interest, or a total undivided one-half interest, and that the four appellees own a total undivided one-half interest, or a one-eighth interest each. Since the title to the two parcels is controlled by separate instruments it is necessary, in construing these instruments, to consider them separately.

## I.

The first parcel is the land situated in Coahoma County, Mississippi, described as E½ of SW¼ of Section 5, and Lots 8, 10, 12, 13 and 14 of Section 6, all in Township 27, Range 3, West. On July 30, 1887, J. H. Brown conveyed this parcel to his daughter "for and during her natural life" with an additional provision "And after the death of the said party of the second part (the daughter), the said above described tract or parcel of land is hereby limited by remainder in fee simple to the children of the said party of the second part then living and their heirs and assigns forever." It is at once apparent that under this deed Mrs. Mary Markus Brown Rodgers acquired a life estate with a contingent remainder in favor of such of her children as might survive her. Since no child survived her the contingent remainder in favor of her children lapsed upon their death. Rose v. Rose, 126 Miss. 114, 124, 88 So. 513. Thereupon the interest which the contingent remaindermen would have taken reverted to the grantor or his heirs. Boxley v.

Jackson, 191 Miss. 134, 1 So. 2d 160. The time for determining who are his heirs is the date of the death of J. H. Brown, which was in 1892. Alexander v. Richardson, 106 Miss. 517, 64 So. 217; Magee v. Morehead, 154 Miss. 828, 123 So. 881. Not only was Mrs. Mary Markus Brown Rodgers the sole heir at law of J. H. Brown, but, moreover, he left a last will and testament whereby the residue of his estate, which includes his reversionary interest in the property in question, was devised to her in fee simple. Therefore, upon the death of her last child in 1939 she became the owner of these lands in fee simple, and the fact that she already owned a life estate therein by deed does not prevent her from acquiring the fee simple estate by will. White v. Inman, 212 Miss. 237, 256, 54 So. 2d 375.

Since the grandmother of appellants and appellees was vested with the fee simple title of said lands at the time of her death intestate in 1950, the same descended to the parties pursuant to Section 468, Code of 1942, which provides "When any person shall die seized of any estate of inheritance in lands, tenements, and hereditaments not devised, the same shall descend to his or her children, and their descendants, in equal parts, the descendants of the deceased child or grandchild to take the share of the deceased parent in equal parts among them * * *." The four appellees herein therefore inherited a total undivided one-half interest, or an undivided one-eighth interest each, being the part which their deceased father would have inherited if he had been living at the death of his mother, and the two appellants herein inherited a total undivided one-half interest, or an undivided one-fourth interest each. being the part which their deceased father would have inherited if he had been living at the death of his mother. The decree is therefore in error in holding that appellants and appellees inherited said land per capita instead of per stirpes, and it must be reversed

and decree entered here in accordance with the respective interests just enumerated.

## II.

The second parcel is the land situated in Coahoma County described as N½ of Section 5, and Lots 1, 2, 3, 5, 6, 7 and 9, in Section 6, all in T. 27, R. 3, West, and also Lot 13 in Section 31, T. 28, R. 3, West. On June 12, 1891, J. H. Brown conveyed this parcel to his daughter "during her natural life, and after her death, to the heirs of her body in fee simple." The deed further provided "that the descendants or heirs of the body or the children of the said party of the second part (Mrs. Rodgers) shall have the right to dispose of, own and possess the property aforesaid in fee simple." It further provided "that the party of the first part (J. H. Brown) shall have the right and said right is hereby reserved by him, to own, possess and dispose of the rents, issues and profits of said property during his natural life and at his death said property shall descend and be taken as hereinbefore stated." The deed contained other provisions not necessary to mention in connection with the first question raised.

1. It is contended that this instrument is testamentary in character and therefore invalid as a deed, and further that it is invalid as a will because not attested by two witnesses. Emphasis is laid on the fact that after reserving a life estate in the grantor the instrument says "and at his death said property shall descend and be taken as hereinbefore stated."

In the case of Gaston v. Mitchell, 192 Miss. 452, 4 So. 2d 892, this Court reviewed numerous prior decisions and reiterated what had been held repeatedly, viz., that ▆▆ when an instrument in the form of a deed specifically provides that it shall not take effect until the death of the grantor, it is testamentary in character and void as a deed, and, as we said in Peebles v. Rodgers, 211 Miss. 8, 14, 50

So. 2d 633, "The test is when the instrument is to take effect as a conveyance of the property described or as to any interest therein." ■■■ The instrument which J. H. Brown executed was in the form of a deed, acknowledged as a deed and recorded as a deed. It clearly disposed of the property irrevocably subject only to a life estate reserved by the grantor. There is no provision therein that it does not take effect until the death of the grantor. At his death the property was to descend and be taken as provided in the deed, and such a provision is wholly consistent with the reservation of a life estate. Moreover, on the very date of this deed J. H. Brown executed a last will and testament wherein no mention was made of the property conveyed by the deed, and this is a strong circumstance showing that he intended this instrument to be a deed instead of a last will and testament. But, regardless of this circumstance, we are of the opinion that the instrument is a deed and not a will.

In Myers v. Viverett, 110 Miss. 334, 70 So. 449, there was in question an instrument in the form of a deed which provided "but it is nevertheless distinctly understood and agreed that the said first parties are to hold possession and exercise control and ownership to and over said lands, tenements, etc., during their natural lives, and at their deaths the said second parties are to be the sole owners thereof," and we held the instrument to be a valid deed.

In Johnson v. Seely, 139 Miss. 60, 103 So. 499, there was under consideration an instrument in the form of a deed which provided "To have and to hold unto the said Mary Eliza Seely (after my death, and this conveyance is not to take effect in possession and personally only until after my death, having and retaining all ownership and use of said property during my life)," and this Court said "We think the instrument is a deed and conveys *in praesenti* the remainder estate to appellee, the possession and enjoyment to take effect at the death of the

grantor. It seems clear to us that the grantor intended to convey title to the grantee, with the reservation of the use and possession in the grantor during her life. The instrument is designated as a deed, acknowledged, delivered, and recorded, is not testamentary in character, and is a valid conveyance of the fee in remainder."

In Carter v. Dabbs, 196 Miss. 692, 18 So. 2d 747, we said "It is elementary that a deed, to be operative, must pass a present interest, while an instrument testamentary in character operates only upon and by reason of the death of the maker, who, by its execution, parts with no right and divests himself of no estate, and who, while possessing the requisite capacity, can revoke or change the same at his pleasure."

In Hald v. Pearson, 197 Miss. 410, 20 So. 2d 71, there was involved an instrument in the form of an absolute deed which provided "It is understood and agreed that said William Pearson is to cultivate said land free of rent, but is to pay the taxes and to support me during the remainder of my life, and that the title to the above land does not pass to him until my death." In construing this instrument we said: "The difference between a deed and a will is that by means of the former a present interest passes, while the latter takes effect only at the death of the testator. Manifestly this instrument took effect when delivered. Pearson acquired during the lifetime of the grantor the title to the land charged with the obligation on his part to maintain and support her the balance of her life, and after her death the title in fee simple."

In Watts v. Watts, 198 Miss. 246, 22 So. 2d 625, there was under consideration an instrument in the form of an absolute deed which provided "The grantor herein specifically reserves unto herself a life estate in and to the above described property, the title to same to be vested in fee simple in the said Booster Watts at the death of said grantor herein." We there said: "It is

elementary that the main distinction between a deed and a will is that the former must pass a present interest in the property purported to be conveyed, whereas a will does not take effect until after the death of the testator. We think it is evident that the foregoing instrument is not a will. It describes itself as a deed, and the purported maker acknowledged it as a deed. It was recorded as such in the deed records on the date of its execution. It is in the words and form of a deed. If legally executed by a mentally competent grantor, which we are not called upon to decide in this proceeding, it vests title immediately. The clause (above quoted) does not postpone until death of the maker the vesting of title to the property. These words are sufficient to pass immediate interest or right, although enjoyment thereof be postponed until the death of the maker, when the full enjoyment merges with the previously vested interest or right.''

In Tanner v. Foreman, 212 Miss. 355, 54 So. 2d 483, there was involved a deed with the following provision: ''It is understood and agreed by and between the parties hereto, that the grantor, J. R. Foreman, herein, reserves the right of possession, free use and occupation of the above described land as long as he lives, and upon the death of the said J. R. Foreman the said grantee, W. W. Foreman, to have the possession and occupation of said land as well as the land hereinabove described.'' It was contended that this provision was testamentary in character and that the instrument was invalid as a deed. In response to that contention we said: ''The instrument was executed and acknowledged in the form of a deed and duly delivered and the consideration therefor paid, and by its plain terms immediately vested the title to the land in the grantee, subject only to the reservation of the right of possession in the grantor, J. R. Foreman, so long as he lived. The instrument must, therefore, be given effect as a valid deed.''

Summarizing our decisions, they hold (1) that even though an instrument may be in the form of a deed, if no present interest is thereby conveyed and it states or clearly shows that it does not take effect so as to pass an interest until the death of the grantor, it is testamentary in character and invalid as a deed, and (2) that where the instrument is in the form of a deed and conveys a present interest, it is valid as a deed even though the possession, use and enjoyment of the property be withheld from the grantee until the death of the grantor. It is clear to us that the instrument here in question conveyed a life estate *in praesenti* to Mrs. Rodgers and merely withheld from her the possession and use of and the income from the property until the death of J. H. Brown. This being true, it is a valid deed.

2. The deed of June 12, 1891, contains this further provision: "To have and to hold unto said party of the second part, during her natural life, and after her death, to the heirs of her body in fee simple." The question is presented whether the grandchildren of Mrs. Rodgers take the fee simple estate per capita or per stirpes. At the time of the execution of this deed she had two children. J. H. Brown of course did not know and could not know whether one or both of these children would survive her, or whether neither would survive her, nor did he know whether she might bear other children subsequent to the date of the deed, nor did he know which of her children would have issue. In designating that the fee simple title would go to the heirs of her body, he unquestionably intended to include such of her surviving issue or offspring as may by law inherit from her to the remotest posterity. 69 C. J. 219, Sec. 1251. It was only by the chance of fate that the heirs or her body at her death consisted only of grandchildren, and that chance was contrary to the accepted tables of mortality. We are asked to construe this deed as if it were a grant to the maker's great grandchildren as a class, in which event

they would take per capita according to the great weight of authority. But this was not a grant to great grandchildren as a class. It might easily have been that one of Mrs. Rodgers' children would have survived her and the other would have predeceased her. In such case, under our statute of descent and distribution, Sec. 468, Code of 1942, the surviving child would have taken an undivided one-half interest in the fee and the children of her deceased son would have taken the other undivided one-half interest equally between them. We have no basis for holding that this deed made a grant to a class who stood in equal relationship to J. H. Brown, for such was not the situation confronting him at the date of the deed nor were the words which he used in conveying the fee of such import as to make the conveyance of the remainder a grant to a class. We must, therefore, look to other authority for a proper construction of the deed.

 In A. L. I. Restatement, Property, Sec. 306, it is said: ''When a limitation is in favor of the 'heirs of the body' of a designated person, or is in other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described by the limitation as conveyees are the lineal descendants of the designated ancestor who under the applicable local law would succeed to the property if such ancestor died owning the property and intestate at the time when the group is to be ascertained in accordance with the rule stated in Section 308.'' As we have just shown, there was nothing in the circumstances surrounding J. H. Brown to indicate a contrary intent, nor did he use any additional language to indicate that those who acquired the fee simple title would take the same per capita; he did not follow his words ''heirs of her body'' with any words of qualification such as ''equally,'' ''in equal share,'' ''share and share alike,'' or other words indicating that the beneficiaries of his grant should take the fee simple title per capita.

In A. L. I. Restatement, Property, Sec. 308, which was referred to in the preceding quotation, it is said: ''When a limitation is in favor of the 'heirs,' 'heirs of the body,' 'next of kin' or 'relatives' of a designated person, or in favor of other groups described by words of similar import, and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances.'' By the deed here under consideration the heirs of the body of the grantee must necessarily be determined as of the date of her death in 1950, and, under the above authority, in so doing we must employ Sec. 468, Code of 1942. When that is done, it is crystal clear that the appellants and the appellees herein took the fee simple estate per stirpes.

What we have just said is fully supported by A. L. I. Restatement, Property, Sec. 310, which says: ''When a limitation is made in favor of the 'heirs,' 'heirs of the body,' 'next of kin' or 'relatives' of a designated person, or in other words of similar import, and the members of the group are ascertained by the application of a statute governing the intestate succession of property at the time required by the rule stated in Section 308, the size of the share limited to each member of the group in the subject matter of such limitation is determined by the application of the same statute unless a contrary intent of the conveyor is found from additional language or circumstances.'' As we have already pointed out, this deed contained no additional language, nor were there additional circumstances indicating a contrary intent in the mind of J. H. Brown when he executed the deed.

The argument is made that appellants and appellees are all in the same degree of relationship to J. H. Brown, but this does not alter the situation. In paragraph d of

the comment under the aforesaid Sec. 310 of A. L. I., Property, as to the operation of the rule, it is said: "The members of a group ascertained by the application of a statute governing the intestate succession of property either may be in different degrees of relationship to the designated ancestor or, being all in the same degree of relationship to the designated ancestor, the number descending from one stirps may be greater than the number descending from another stirps. A per capita distribution among the takers in either of these two situations would be likely to cause an unequal distribution among the various branches of the family of the designated ancestor. To prevent such inequality the various statutes governing the intestate succession of property usually provide for distribution on a per stirpes basis when the takers are in different degrees of relationship (See Illustration 1) and sometimes so provide even when they are in the same degree of relationship (See Illustration 2). The rule stated in this Section adopts the statutory plan of distribution whatever that plan may be." As we have already pointed out, our statutory plan of distribution requires that the same be on a per stirpes basis, the statute specifically stating "the descendants of the deceased child or grandchild to take the share of the deceased parent in equal parts among them." Illustration 2 under the above subdivision d of Section 310, A. L. I. Restatement, Property, fully supports our conclusion that as to the land conveyed by the deed of June 12, 1891, which we have hereinabove designated as the second tract, the appellants each own an undivided one-fourth interest, or a total undivided one-half interest, and that the appellees each own an undivided one-eighth interest each, or a total undivided one-half interest. The learned chancellor having held that appellants and appellees each own an undivided one-sixth interest, we are convinced that he was in error, and the decree of the lower court as to the second tract will be reversed

and decree here entered adjudicating the parties to own said land in accordance with our conclusions above expressed.

### III.

The Federal Land Bank of New Orleans holds two deeds of trust on a portion of the lands hereinabove mentioned and their validity is not questioned. The chancellor decreed that said deeds of trust are valid and binding liens on the lands therein conveyed. His decree in that respect is correct and will be affirmed.

Affirmed in part and reversed in part and final judgment here.

*Roberds, P. J.,* and *Kyle, Holmes* and *Lotterhos, JJ.,* concur.