# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00820-COA

IN THE MATTER OF THE ESTATE OF                        **APPELLANT**
KENNETH B. DORRIS, DECEASED: GLENDA
MOORE

v.

THE ESTATE OF KENNETH B. DORRIS,                   **APPELLEES**
DECEASED, AND KATHRYN B. DORRIS
CRENSHAW, AS THE EXECUTRIX OF THE
ESTATE OF KENNETH B. DORRIS, DECEASED

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/2024 |
| TRIAL JUDGE: | HON. JACQUELINE ESTES MASK |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL SPENCER CHAPMAN |
| ATTORNEYS FOR APPELLEE: | JOHN S. GRANT IV |
| | BROOKE TRUSTY GRANT |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 01/20/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    Glenda Moore was a creditor of the Estate of Kenneth B. Dorris, deceased. While the Estate was being probated in Pontotoc County Chancery Court, Moore filed a "Probate of Claim" for $79,226.57. The Estate[1] and Moore subsequently settled Moore's claim for $10,471.77. On November 17, 2021, Moore and the Estate entered into an agreed order resolving the claim, and the Estate was closed the same day. In 2023, Moore moved to

---

[1] Where applicable, the Estate of Kenneth B. Dorris, deceased, and Kathryn B. Dorris Crenshaw, as the Executrix of the Estate, are collectively referred to as "the Estate."

reopen the Estate, asserting that pursuant to the terms of the November 2021 agreed order, she was entitled to a one-half interest in certain real property interests in Calhoun County, Mississippi, that Kenneth's parents, Max and Carolyn Dorris, had conveyed to Kenneth and his brother in 2005. Max and Carolyn had retained life estates in these properties, and Carolyn, the last life tenant, died in 2020. Moore thus argued she was entitled to one-half of Kenneth's one-half interest from his parents' conveyance.

¶2. In her Memorandum Opinion and Order entered on June 17, 2024, the chancellor rejected Moore's claim based upon the chancellor's interpretation of the November 2021 agreed order's terms.

¶3. Moore appeals, asserting that the chancellor erred in her interpretation of the November 2021 agreed order. Alternatively, Moore asserts that this matter should be remanded to allow the chancery court to consider whether the Estate committed a fraud on the chancery court. For the reasons addressed below, we reject Moore's contentions and affirm the chancellor's June 2024 order.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶4. Max and Carolyn owned certain tracts of land in Calhoun County, Mississippi. In 2005, Max and Carolyn conveyed these properties to their two sons, Kenneth and Brian, pursuant to two separate quitclaim deeds. In both quitclaim deeds, Max and Carolyn reserved life estates in the properties. We will refer to these properties as the Calhoun County properties.

¶5. Kenneth died testate on December 11, 2018. His will was admitted for probate on

October 2, 2019. In his will, Kenneth left "all of my estate, whether real, personal, or mixed property, of whatever kind and wheresoever situated, in equal shares," to his two daughters, Kathryn B. Dorris and Kay Ann Dorris. During probate, Moore filed her Probate of Claim on November 5, 2019, for $79,226.57.

¶6. Carolyn died on April 23, 2020. It is undisputed that Max predeceased Carolyn, although the exact date of his death is unknown.

¶7. On November 17, 2021, the Estate and Moore settled Moore's probated claim for $10,471.77. An agreed order resolving the claim and approved by the chancellor was entered on that date (the November 2021 agreed order). In relevant part, the agreed order provided:

> CAME ON THIS DAY on Motion *ore tenus* of the parties, and the Court finding that it has jurisdiction of the subject matter and parties herein, and the Court being advised that the parties have reached an agreement in this matter, and the Court finds said agreement fair and reasonable, the Court does hereby order as follows:
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Glenda Moore shall receive the sum of . . . $10,471.77, which represents fifty percent . . . of funds in the Estate of Kenneth B. Dorris, Deceased; it is
> . . . .
>
> FURTHER ORDERED, ADJUDGED AND DECREED that in the event any future assets of the Estate of Kenneth B. Dorris were to arise after the closing of this Estate, Glenda Moore shall receive fifty percent . . . of any and all of those future assets; it is
>
> FURTHER ORDERED, ADJUDGED AND DECREED that the parties agree this agreement with Glenda Moore is in full satisfaction of the allegations contained in Glenda Moore's Complaint previously filed in Pontotoc County Circuit Court Cause No. 2019-0272-F(PO); it is
>
> FURTHER ORDERED, ADJUDGED AND DECREED that upon payment of . . . $10,471.77, representing fifty percent . . . of the estate assets, received by Glenda Moore, she shall dismiss the case in Pontotoc County Circuit Court

3

Cause No. 2019-0272-F(PO); it is

SO ORDERED, ADJUDGED AND DECREED this the 17 day of November, 2021.

¶8. An "Order Closing Estate and Discharging [Executrix]" was also entered on November 17, 2021. In that order, the chancellor described the Estate's administration, and after finding that the Estate had been "fully and finally administered," the chancellor closed the Estate and discharged the executrix. In paragraphs five through seven of this order, the chancellor found that the personal property of the deceased (Kenneth) was sold at auction for a total amount of $31,704.50. After subtracting the fees for "auction related items" and attorney's fees, $20,943.54 was left. In paragraph nine of the order, the chancellor addressed the Moore settlement, finding as follows: "That one . . . claim was filed by Glenda Moore. That due to the limited funds available in this estate, the parties have agreed upon a settlement of the claim. Glenda Moore shall receive the sum of . . . $10,471.77." The chancellor then reiterated the same provision found in the agreed order concerning "future assets," as follows: "That in the event any future assets of the Estate of Kenneth B. Dorris were to arise after the closing of this Estate, Glenda Moore shall receive fifty percent . . . of any and all of those future assets. This is evidenced by the signed agreed order filed in this matter."

¶9. Approximately a year and a half later, on April 18, 2023, Moore filed a "Motion to Reopen Estate and Appoint Temporary Administrator." In that motion, Moore asserted that Kenneth "owned, at the time of his death, a future interest in [the Calhoun County properties in which Kenneth's parents had held a life estate]." Moore further asserted that when

4

Carolyn died on April 23, 2020, "the interest in the real property vested in [Kenneth's] Estate." Based on this premise, Moore asserted that "[a]ccordingly, this is property that is a 'future asset' of the subject Estate, as contemplated in [the chancery court's November 17, 2021 Order Closing Estate]." Solely on this basis, Moore requested the chancery court to reopen the Estate and appoint a temporary administrator "to execute a deed to [Moore] . . . for her fifty [percent] . . . share of the Decedent's interests in the [Calhoun County] properties."

¶10. The chancellor subsequently approved an agreed order to reopen the Estate and appoint a temporary administrator. On March 19, 2024, the chancellor ordered the parties to submit "letter brief[s]" setting forth "their argument as to whether or not the life estate at issue in this case transferred to the Deceased or to his heirs, and whether or not the property would fall under the provision of the Order closing the estate."

¶11. The chancellor's Memorandum Opinion and Order was entered on June 17, 2024 (June 2024 order). The chancellor's June 2024 order was based upon the parties' "written arguments" and contained the chancellor's specific finding that in light of these submissions, she "may rule [on the motion] without further hearing." The chancellor denied Moore's request for relief—that is, that the temporary administrator "execute a deed to [Moore] . . . for her fifty [percent] . . . share of the Decedent's interests in the [Calhoun County] properties." In relevant part, the chancellor found:

> [I]n 2005, Max and Carolyn conveyed their interest in the subject properties to Kenneth and Brian Dorris, reserving in themselves a life estate. This characterization of the conveyances is uncontroverted. . . . Thus, a remainder interest vested in Kenneth at the time of the conveyances. Thereafter, upon

5

Carolyn's death in 2020, the possessory interest which had been held by Kenneth ripened.

. . . Kenneth's will devised his interest in the subject real estate to his two daughters. . . . Under [Mississippi law] . . . Kenneth's devisees took their interest in the property subject to Kenneth's debts. Nevertheless, the parties herein resolved the debt owed by Kenneth to Moore on specific terms negotiated between them and approved by the Court, described above, rather than by compelling the sale of Kenneth's interest in the subject real property or other form of relief. Neither Kenneth nor his devisees received any further or greater interest therein subsequent to the [2021] settlement with Moore and the closing of the Estate, with the last life tenant having died over one year prior [in 2020]. Therefore, the interest of Kenneth and his devisees does not fall within the category of "future assets of the Estate of Kenneth B. Dorris . . . aris[ing] after the closing of [the] Estate."

¶12. Moore appealed.

**STANDARD OF REVIEW**

¶13. "On appeal, we will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Est. of Warren v. Maharrey*, 402 So. 3d 167, 182 (¶56) (Miss. Ct. App. 2024) (internal quotation mark omitted), *cert. denied*, 401 So. 3d 1028 (Miss. 2025). "We utilize a de novo standard of review when reviewing questions of law." *Est. of Avakian v. Wilmington Tr. Nat'l Ass'n*, 231 So. 3d 208, 214 (¶22) (Miss. Ct. App. 2017).

**DISCUSSION**

**I. Interpretation of the November 2021 Agreed Order**

¶14. Moore asserts that the chancellor erred in finding that Kenneth's remainder interests in the Calhoun County properties were not encompassed by the "future assets" language in

6

the November 2021 agreed order resolving her claim against the Estate.[2]  For the reasons stated, we are unpersuaded by Moore's assertions.

¶15.    To briefly review, the November 2021 agreed order contained the following provision: "FURTHER ORDERED, ADJUDGED[,] AND DECREED that in the event any future assets of the Estate of Kenneth B. Dorris were to arise after the closing of this Estate, Glenda Moore shall receive fifty percent . . . of any and all of those future assets."  For ease of reference, we sometimes refer to this clause as the "future assets" provision of the November 2021 agreed order.  "[A]n agreed order is treated as if it is a contract," *Harrison v. Howard*, 356 So. 3d 1232, 1244 (¶38) (Miss. Ct. App. 2023), and we apply "[a] novo standard of review . . . to questions of contract construction." *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶16) (Miss. 2012).

¶16.    Our "interpretation of a contract involves a three-step analysis." *Id.*  "First, we must determine whether the contract is ambiguous, and if it is not, then it must be enforced as written." *Id.* at (¶17). At this stage, we must apply "the four corners test . . . wherein the reviewing court looks to the language that the parties used in expressing their agreement." *Facilities Inc. v. Rogers-Usry Chevrolet Inc.*, 908 So. 2d 107, 111 (¶10) (Miss. 2005) (internal quotation marks omitted).  "If the contract is unambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract and parole evidence should not be considered." *Epperson*, 93 So. 3d at 16 (¶17) (internal quotation marks omitted).  In this regard, "when interpreting a contract, the court's concern is not

---

[2] As noted, the same "future assets" language was contained in the order closing the estate, which was also entered on November 17, 2021.

7

nearly so much with what the parties may have intended but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *HeartSouth PLLC v. Boyd*, 865 So. 2d 1095, 1105 (¶27) (Miss. 2003) (internal quotation mark omitted). Second, "[i]f the parties' intent is unclear, the court will utilize the applicable canons of contract construction." *Cherokee Ins. Co. v. Babin*, 37 So. 3d 45, 48 (¶8) (Miss. 2010) (internal quotation marks omitted). Third, only "if the meaning remains ambiguous, . . . may the court [then] consider extrinsic evidence." *Id.*

¶17. Here, we must apply these contract construction principles in determining whether Kenneth's interests in the Calhoun County properties, which Kenneth's devisees inherited when he died, fall within the "future assets" language in the November 2021 agreed order. As such, we must examine the nature of these interests.

¶18. In *Estate of Greer*, the Mississippi Supreme Court explained that when a grantor conveys a remainder interest to the grantee and retains a life estate, the effect is to "vest[] [the interest] in the grantee effective upon delivery of the deed," while "postpon[ing] only the grantee's right of possession or occupancy." *Est. of Greer v. Ball*, 218 So. 3d 1136, 1139 (¶9) (Miss. 2017); *see also, e.g.*, *Watts v. Watts*, 198 Miss. 246, 251, 22 So. 2d 625, 626 (1945) (recognizing that title to land vested immediately in the grantee upon conveyance of the deed, subject only to the grantor's reservation of a life estate).

¶19. Upon the death of the grantor, the remaining interest in the property—i.e., "the possession, use[,] and enjoyment of the property" transfers to the grantee. *Rodgers v.*

8

*Rodgers*, 218 Miss. 655, 666, 67 So. 2d 698, 702 (1953). If the grantee dies before the grantor, the remainder interest does not lapse because it was vested. Instead, it passes to the grantee's heirs or devisees. *See McClelland v. Bank of Clarksdale*, 238 Miss. 557, 572, 119 So. 2d 262, 267-68 (1960) (recognizing that where the wife received a life estate in property upon her husband's death, with the remainder interest held by named persons, the vested remainder interests were inherited by the remaindermen's devisees where the remaindermen predeceased the life tenant).

¶20. Lastly, under Mississippi law, any devise of real property is subject to the claims against the deceased, as follows:

> The real property . . . [and] personal property . . . of the deceased, or which may have accrued to his estate after his death from the sale of property, real, personal or otherwise, . . . shall be assets and shall stand chargeable with all the just debts, funeral expenses of the deceased, and the expenses of settling the estate, without any preference or priority as between real and personal property, and shall abate in the manner set out in Section 91-7-90.

Miss. Code Ann. § 91-7-91 (Rev. 2021). As the supreme court has clarified, "the law of this State is that in the absence of a contrary provision in a will, resort must first be had to the personal property in the payment of debts and expenses of the estate including federal estate taxes, before resort may be had to real property." *Wirtz v. Switzer*, 586 So. 2d 775, 781 (Miss. 1991), *abrogated on other grounds by Upchurch Plumbing Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100 (Miss. 2007).

¶21. Applying these principles here, Max and Carolyn transferred ownership in the Calhoun properties to Kenneth and his brother through the 2005 quitclaim deeds, subject only to Max and Carolyn's life estates, which terminated when Carolyn, the last life tenant, died

9

on April 23, 2020. Because Kenneth predeceased Carolyn in 2018, Kenneth's devisees (his daughters) inherited his vested remainder interests, which ripened into full possessory interests when Carolyn died in 2020. Any *future* interests in the Calhoun County properties Kenneth or his devisees held were extinguished when Carolyn died in 2020. As such, based upon our own de novo review, we find that the chancellor correctly determined that "[n]either Kenneth nor his devisees received any further or greater interest subsequent to the settlement with Moore and the closing of the Estate [(in 2021)], with the last life tenant having died over one year prior [(in 2020)]." Applying the plain language of the November 2021 agreed order to these circumstances, the chancellor therefore found that "the interest of Kenneth and his devisees does not fall within the category of 'future assets of the Estate of Kenneth B. Dorris [arising] after the closing of the Estate.'"[3] We agree based upon our own de novo review and analysis, as we will now discuss.

¶22. As an initial matter, we find that the agreed order's "future assets" provision was not ambiguous. We therefore must glean "the intention of the contracting parties . . . from the wording of the contract." *Epperson*, 93 So. 3d at 16 (¶17). Like the chancellor, we find that

---

[3] We recognize that the interests in the Calhoun County properties were subject to Kenneth's debts under section 91-7-91 and the Mississippi law discussed above. As the chancellor found, however, "the parties [nevertheless] resolved the debt owed by Kenneth to Moore on specific terms negotiated between them and approved by the Court, . . . rather than by compelling the sale of Kenneth's interest in the subject real property or other form of relief." The chancellor made this finding based upon the record before her and the "written arguments of counsel." We find no error in this finding. As we discuss below, other than asserting that the Calhoun County property interests fell within the "future assets" provision of the November 2021 agreed order, Moore made no other allegation or contention in support of reopening the Estate, nor did Moore attempt to proceed against the Estate in any other matter.

the devisees' vested remainder interests in the Calhoun County properties that they received when Kenneth died ripened into full possessory interests when Carolyn died in 2020. Applying the "future assets" language, as written, we find that because the devisees gained present possessory interests in the properties in 2020, over a year before the parties entered into the November 2021 agreed order and before the Estate closed in 2021, these real property interests do not constitute "future assets" of Kenneth's Estate "aris[ing] . . . *after* the closing of the Estate.'" (Emphasis added).

¶23.    Moore, however, asserts that the subject language "was just a run-of-the-mill agreement that should it arise that any assets are later found down the road, or in the future, to have been assets of the Estate, then Ms. Moore will get her one half share." According to Moore, the November 2021 agreed order was therefore "ambiguous and thus this issue must be submitted to the trial court for remand." We are unconvinced by this argument. To be sure, an agreement can be ambiguous if it is "susceptib[le] to two reasonable interpretations," *Dalton v. Cellular S. Inc*., 20 So. 3d 1227, 1232 (¶10) (Miss. 2009), but "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Epperson*, 93 So. 3d at 16-17 (¶18).

¶24.    Here, we find that Moore's interpretation is simply not what the specific language in the "future assets" provision says, nor do we glean any such interpretation based upon our reading of the November 2021 agreed order as a whole. Indeed, only by eliminating the term "future" from the "future assets" provision would it meet Moore's interpretation. In that case, the clause would address what would happen if "any ~~future~~ assets of the Estate of

11

Kenneth B. Dorris were to arise after the closing of this Estate, Glenda Moore shall receive fifty percent (50%) of any and all of those ~~future~~ assets." Instead, the provision specifically addresses only *future* assets of the Estate as contemplated by the parties when they agreed to the language in November 2021. The language used by the parties—as written and agreed upon—is clear and unambiguous. Accordingly, "the parties are bound by the language of the instrument," and we simply "do not have the authority to modify, add to, or subtract from the terms of a contract validly executed between two parties." *Id.* at 17 (¶18). As explained above, there were no "future assets" of the Estate in the Calhoun County properties after the last life tenant died in 2020. Moore was therefore not entitled to fifty percent of those interests under the November 2021 agreed order.

¶25. Alternatively, Moore asserts that the chancellor erred in interpreting the November 2021 agreed order "as a whole" because "[t]he agreement clearly stated that the payment of $10,471.77 from the Estate to . . . Moore[] 'represent[ed] fifty percent (50%) of the estate assets,'" but after entry of the agreed order and the order closing the Estate, Moore "determined . . . that . . . [the] Estate held a significant interest in [the Calhoun County properties]." Thus, Moore appears to claim that at the time of the settlement, she was misled or mistakenly believed that the $10,471.77 settlement amount represented half of the value of everything subject to creditors' claims against the deceased. We reject this contention because it is procedurally barred, and, in any event, the record contains no evidence supporting Moore's assertions.

¶26. When Moore moved to reopen the Estate in April 2023, she supported her motion

*solely* on the ground that she was entitled to fifty percent of the value of the Estate's interest in the Calhoun County properties pursuant to the "future assets" provision in the November 2021 agreed order. Moore made no attempt to compel a sale of the Calhoun County properties pursuant to Mississippi Code Annotated section 91-7-195 (Rev. 2021),[4] nor did Moore attempt to pursue any relief pursuant to Mississippi Rule of Civil Procedure 60(b). Rule 60(b) allows for relief from a final judgment based upon "fraud, misrepresentation, or other misconduct of an adverse party," "accident or mistake," "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial," or other grounds, but Moore never sought to have the November 2021 agreed order set aside for any of these reasons.[5]

¶27. Similarly, in *Home Base Litter Control*, we recognized that "a contract entered into by fraudulent inducement—an illegal factor outside the contract—renders a contract voidable, not void." *Home Base Litter Control LLC v. Claiborne County*, 183 So. 3d 94, 101 (¶22) (Miss. Ct. App. 2015). "A voidable contract will only be invalidated if '*the one defrauded . . . act*[*s*] *promptly and finally to repudiate the agreement*[.]'" *Id.* (emphasis added) (quoting *Turner v. Wakefield*, 481 So. 2d 846, 848-49 (Miss. 1985)). Moore took no

---

[4] Section 91-7-195 provides that "[a]ny creditor of the decedent whose claim against the estate is registered shall have the right to file a petition, as the executor or administrator may, for the sale of land or personal property of the decedent for the payment of debts." Miss. Code Ann. § 91-7-195.

[5] We note, however, that even if Moore had filed a motion pursuant to Rule 60(b)(1)-(3), it would have been time-barred. *See* M.R.C.P. 60(b) ("The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken.").

such action at all.

¶28. Because Moore never took action regarding any of these grounds in the trial court, any claims on these grounds are procedurally barred on appeal. *McNeese v. McNeese*, 119 So. 3d 264, 275 (¶36) (Miss. 2013) ("Issues raised for the first time on appeal are procedurally barred. The well-recognized rule is that a [chancellor] will not be put in error on appeal for a matter not presented to [her] for decision." (citation and internal quotation mark omitted)), *as modified on denial of reh'g* (Miss. Aug. 22, 2013); *Harrison*, 356 So. 3d at 1246 (¶45).

¶29. We also reject Moore's claim that *she* was somehow defrauded or mistakenly entered into the November 2021 agreed order because the record contains no evidence supporting such assertions. Although Moore asserts in her appellant's brief that the agreed order "was premised upon a falsehood regarding Estate assets," this statement is "merely argument of counsel, which is not proof of the purported facts asserted." *Ladner v. Hinton Homes LLC*, 419 So. 3d 959, 969 (¶38) (Miss. Ct. App. 2025). "[We] may not act upon or consider matters which do not appear in the record and must confine [ourselves] to what actually does appear in the record." *Pace v. Pace*, 324 So. 3d 369, 381 (¶39) (Miss. Ct. App. 2021) (quoting *Copeland v. Copeland*, 235 So. 3d 91, 97 (¶17) (Miss. 2017)). Because the record contains no evidence of fraud, mistake, or illegality concerning the resolution of Moore's claim against the Estate in 2021, we find no basis for reversal or remand of the chancellor's June 2024 order on these grounds.

## II.    Fraud on the Court

¶30. Moore asserts on appeal that this case should be remanded because the Estate

14

committed a fraud on the chancery court. For the reasons addressed below, we find that this issue is procedurally barred. Further, we decline to address this issue on the merits, as the record is devoid of any proof of fraud on the chancery court or fraud in any manner.

¶31. "A fraud upon the court is an intentional misdeed that vitiates a judgment because the court is misled and deceived about the facts it relies upon when administering the law." *In re Adoption of D.A.S.*, 391 So. 3d 1181, 1186 (¶20) (Miss. 2024) (internal quotation marks omitted). "Relief based on fraud upon the court is reserved for only the most egregious misconduct, and requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Trim v. Trim*, 33 So. 3d 471, 477 (¶15) (Miss. 2010) (internal quotation marks omitted); *O'Steen v. O'Steen*, 304 So. 3d 697, 700 (¶10) (Miss. Ct. App. 2020). "[T]he mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to fraud upon the court." *O'Steen*, 304 So. 3d at 701 (¶12).

¶32. We recognize that a chancellor has the inherent authority to set aside a judgment "obtained by a fraud upon the court." *Doe v. Smith*, 200 So. 3d 1028, 1034 (¶23) (Miss. 2016); *Stacks v. Smith*, 291 So. 3d 809, 815 (¶18) (Miss. Ct. App. 2020) (recognizing that "the chancery court possessed the inherent power to set aside a judgment obtained by a fraud on the court" (emphasis omitted)). And generally speaking, there is no time limit on the chancellor's ability to grant relief for fraud on the court. *Trim*, 33 So. 3d at 479 (¶21) (affirming chancellor's ruling, recognizing that the husband's "submission of a substantially false Rule 8.05 financial disclosure statement constituted a fraud on the court, and no time

15

limit was applicable to the court's ability to remedy the fraud by modifying the final judgment of divorce"); *In re Est. of Reid*, 825 So. 2d 1, 7 (¶23) (Miss. 2002) (recognizing chancellor's "inherent power to vacate a judgment at a subsequent term of court when the judgment is void because of fraud in its acquisition").

¶33.    In the case before us, however, Moore never sought relief in the chancery court based on a purported fraud on the court (or any fraud-based allegation).  Instead, Moore raises her fraud-on-the-court contention for the first time on appeal.  "Before an issue may be assigned and argued in this Court, it must first be presented to the trial court."  *Harrison*, 356 So. 3d at 1246 (¶45).  Because Moore did not raise any fraud-on-the-court issue before the chancery court, it is not properly before this Court and is procedurally barred.  *Est. of Smith v. Boolos*, 204 So. 3d 291, 312-13 (¶49) (Miss. 2016) (failure to raise fraud claim in chancery court bars its consideration on appeal); *Urban v. Urban*, 411 So. 3d 1092, 1103 (¶¶37-39) (Miss. Ct. App. 2023) (finding father's fraud-on-the-court and bias claims were procedurally barred because they were presented for the first time on appeal); *see also Smith v. Womans Hosp*., 671 F. App'x 884, 887 (5th Cir. 2016) ("For the first time on appeal, Smith argues that the district judge committed fraud on the court by mischaracterizing his argument concerning service of process. We will not entertain arguments raised for the first time on appeal."); *Ortega v. Young Again Prods. Inc*., 548 F. App'x 108, 112 (5th Cir. 2013) (finding that the appellant waived his right to challenge the district court's order granting appellees' motion to dismiss based upon a fraud on the court claim where appellant's "untimely mention of this theory afforded no opportunity for the district court to consider it and thus failed to preserve

16

that theory for appellate review").

¶34. We recognize Moore now asserts on appeal that "the Estate committed a fraud upon the [chancery] court by falsely claiming that the Estate had no real property assets," but purported "[f]actual assertions in appellate briefs are not evidence and will not be used as grounds for reversing the trial court's judgment." *Pace*, 324 So. 3d at 381 (¶39). As noted, Moore did not allege any fraud-based claims in the chancery court, and, upon review, we find no evidence in the record of any intentional misrepresentation or misdeed on the Estate's part regarding the Estate's assets, *see D.A.S.*, 391 So. 3d at 1186 (¶20), or evidence of conduct so egregious on the Estate's part that would demonstrate an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." *O'Steen*, 304 So. 3d at 700 (¶10). Such evidence is crucial to a fraud-on-the-court claim, and the record is devoid of any such proof here. *See, e.g.*, *D.A.S.*, 391 So. 3d at 1186-87 (¶20) (rejecting natural mother's fraud-on-the-court argument in adoption proceeding based on mother's contention she was falsely led to believe it would be an "open" adoption where "no sworn filing before the court or sworn testimony that the adoption would be an open adoption exist[ed] in the record"); *O'Steen*, 304 So. 3d at 701 (¶12) (rejecting husband's contention that his wife's failure to file her financial disclosure in their divorce proceeding was a fraud-on-the-court where "[t]he record [was] devoid of any proof that [the wife] intentionally misrepresented facts to the chancery court").

¶35. Accordingly, given the complete lack of any record evidence supporting Moore's fraud-on-the-court assertion, we decline to address this issue on appeal. *See Boolos*, 204 So.

17

3d at 312-13 (¶¶48-49) ("declin[ing] to address" claims of concealment, deceit, and misinformation raised by the estate of the decedent's grandson against the co-executors of decedent's estate where fraud was never raised in the trial court); *Urban*, 411 So. 3d at 1103 (¶39) (declining to address father's fraud-on-the-court, fraud, and bias claims on the merits where the claims were raised for the first time on appeal and the facts concerning these claims were not "adequately developed" in the record).

¶36.    **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**